Arnold Bakeries, Inc. & Aetna Life and Casualty Company, Petitioners *v.* Workmen's Compensation Appeal Board (Knowles), Respondents.

Argued November 17, 1983, before Judges CRAIG, DOYLE and BARBIERI, sitting as a panel of three.

*Ronald D. Sweeda,* with him *David W. Saba, Hourigan, Kluger & Spohrer Associates,* for petitioners.

*C. Daniel Higgins,* for respondent, Charleen J. Knowles, widow of Walter J. Knowles, Jr.

Opinion by Judge Barbieri, March 1, 1984:

Arnold Bakeries, Inc. (Arnold) and its insurer, Aetna Life & Casualty Company, appeal to this Court from an order of the Workmen's Compensation Appeal Board (Board), which affirmed a referee's award of benefits to Charleen J. Knowles (claimant), widow of Walter J. Knowles, Jr. The award provided benefits to the claimant and two of her children, statutory dependents of Walter J. Knowles, Jr., whose death was found to be work-related.

The issue before the referee was whether or not the employer had met its burden of proof under Section 301(a) of the Workmen's Compensation Act,[1] in support of its defense that the deceased employe's death was "caused by the employe's violation of law . . . ," in that he was allegedly intoxicated when he drove his car into a tree on his way home from a business meeting, thereby causing his death, and in that, at the time, allegedly he was driving under the influence of intoxicating liquor which constitutes a misdemeanor under Section 3731 of the Vehicle Code, 75 Pa. C. S. §3731; it being also provided under the Vehicle Code, Section 1547, 75 Pa. C. S. §1547, that a person with 0.10% or greater alcohol content in the blood is presumed to be under the influence of intoxicating liquor.

While conceding that under Section 301(a) the burden of proof of the defense of violation of law is upon the employer, petitioners here contend that their burden has been so incontrovertibly established that the referee's failure to accept this defense as presented represents a capricious disregard of the competent evidence, relying principally upon our decision in *Abbotts Dairies v. Workmen's Compensation Ap-*

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §431.

*peal Board* (Yates), 38 Pa. Commonwealth Ct. 423, 393 A.2d 517 (1978). We do not agree.

It is uncontested that decedent met his death on March 14, 1979, as a result of injuries sustained in the automobile accident previously mentioned when, driving alone, his car ran off the road and into a tree at a time fixed between 1:50 A.M., when a fellow employe last saw him and approximately 3:10 A.M., the latter time estimated by a State Trooper. He had been at work since 5:00 A.M. on March 13, 1979, so that the span of waking and working time was approximately twenty-two hours. At dinner on March 13, 1979, and during the course of the business meeting attended by decedent, some beer was served and it is known that the decedent drank two bottles of beer with his dinner. There is no direct evidence as to how much he may have had to drink during the evening after dinner, but it is uncontradicted that there was nothing served except beer and soda. When decedent left the meeting, he drove a fellow employe to his car, a distance of twenty miles over narrow mountain roads, with no indication to this witness that he was limited in any way in his capacity to drive. In fact, this witness and four others gave positive opinions without objection that the decedent was not under the influence of alcohol or intoxicated at any time during the evening when they observed him. A test of blood taken from his heart revealed a .18% alcohol level which one of defendants' medical witnesses testified would result in incapacitation to operate a vehicle effectively. There is other testimony demonstrating that in medical science it is questioned whether a blood alcohol test can be relied upon as an accurate representation when the sample or specimen is taken from blood in the heart area rather than blood in a circulating area such

as an extremity. Indeed, the record contains medical comments that the difference could be as great as .09% which, in this case, could reduce the reading to .09%, slightly below the .10% required to raise the presumption of intoxication under the Vehicle Code.[2] Claimant asserts that this testimony casts "considerable medical and scientific doubt" on the validity of the presumption, certainly to the extent that the referee could find, as he did, that the presumption was rebutted, or the referee could properly make a finding con-

---

[2] Dr. John Tinsley, the autopsy pathologist called by defendants, testified on cross-examination, referring to a published article on blood sampling techniques, stated:

A. Out of 51 cases in which alcohol was present in the body, the level of alcohol in blood pooled in the pericardial sac was falsely and significantly elevated in 8 cases. The alcohol level in the blood from the femoral vein was not in any case significantly elevated. The elevation is believed to result from alcohol which was ingested before death diffusing out of the stomach after death. Because of the gravity of decisions attaching to blood alcohol determinations, it is recommended that post-mortem blood alcohol samples be routinely taken from femoral veins. Also. . . .

Q. The Practical Significance, do you want to read that too?

A. Well, just the last sentence. As has been shown, a false elevation of either 0.05 or 0.09 percentage points in the heart blood alcohol can occur, which would give an erroneous blood alcohol level of 0.16% or 0.20%, they're referencing that to a level of 1.1. . . .

Q. Correct.

A. . . . respectively, thus clearly but improperly establishing that a person was intoxicated. This is for purposes, I guess, of proving drunk driving. Again, even assuming the maximum deviation here, that would still leave us with a blood alcohol level in this case of 0.9—I mean 0.—.09. . . .

Q. .09. . . .

A. . . . correct, which would still indicate alcohol in the blood stream.

trary to the presumption without being in capricious disregard of the competent evidence. The claimant contends, also, that the testimony of family and other witnesses indicating that decedent was very tired provides an alternate and reliable explanation for the accident: that decedent fell asleep while driving, particularly as supplemented by the investigating State Trooper who testified that the direction of the car and other signs at the scene led him to reach a first impression that the accident had been caused by the decedent falling asleep while driving. Claimant contends that these and other circumstances provide a basis on which the referee could find as he did, in favor of the claimant, without a capricious disregard of the statutory inference in the presumption.

Furthermore, it must be remembered that the defense on which the petitioners rely under Section 301-(a) requires that the employer meet the burden of proof to establish that the violation of law *caused* the injury or death. While it may be that the referee in this case could have found the necessary causal relationship, assuming intoxication, and could have found in favor of the petitioners, we find no error in the exercise of his discretion as a fact finder in finding in favor of the claimant. In this connection, we note that *Abbotts Dairies* and the instant case are not comparable. In *Abbotts Dairies,* the referee found in favor of the employer, whereas in the instant case the employer did not prevail.

Accordingly, for the reasons stated, we will affirm.

### ORDER

Now, this 1st day of March, 1984, the order of the Workmen's Compensation Appeal Board at No. A-82852, dated February 17, 1983, is affirmed.