**Sandra Lee BURNS, Widow of Michael J. Burns, Deceased, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (STATE PIPE SERVICES, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 1, 1994.

Decided Jan. 5, 1995.

Ronald P. Koerner, for petitioner.

Edward A. McFarland and William S. Evans, for respondent.

Before DOYLE and KELLEY, JJ., and NARICK, Senior Judge.

KELLEY, Judge.

Sandra Lee Burns (claimant), widow of Michael J. Burns (decedent), appeals an order of the Workmen's Compensation Appeal Board which affirmed the referee's decision

dismissing claimant's fatal claim petition pursuant to section 301(a) of The Pennsylvania Workmen's Compensation Act.[1] We affirm.

Decedent was employed by State Pipe Services, Inc. (employer) as a foreman. Decedent was a salaried employee with the use of a company truck and no fixed place of employment. He worked at various job sites until the job was completed. As a result, decedent would have to stay in motels for which employer paid the motel bills.

On November 19, 1987, decedent was the foreman on a job in Ridgeway, Pennsylvania. On that date, decedent was fatally injured in an automobile accident. The accident occurred sometime between 10 p.m. on November 18, 1987 and 5 a.m., November 19, 1987, when decedent was discovered dead in the company truck by the state police. The company truck was located on the east side of the berm up against a large tree. Decedent died as a result of massive head injuries.

Claimant filed a fatal claim petition on November 8, 1989 alleging that decedent died on November 19, 1987 while employed by employer as a job supervisor. Claimant alleged that decedent was on route to setting up the job for the day when he was killed in an automobile accident because of a flat tire.

Employer filed a timely answer denying that decedent was in the course of his employment and averred that decedent's death was caused by intoxication in violation of the law.

Several hearings were held before the referee wherein claimant presented the deposition testimony of several witnesses including Trooper Edward J. Janiszewski, Richard Ford, and Lawrence Block, Ph.D. Trooper Janiszewski testified that he arrived at the accident scene just prior to 6 a.m. when he discovered decedent pinned in the company truck. Trooper Janiszewski testified further that the right rear tire on the company truck

was deteriorated to the point where the only thing that was left was the sidewalls as the center tread part was completely gone from the tire. Trooper Janiszewski testified that he found pieces of tire all along the roadway in a northerly direction from which decedent traveled for approximately 1.7 miles and that he found a pretty good chunk located at an intersection. The trooper also found skid marks and gouge marks in the road surface from the right rear rim closer to the point where decedent's vehicle left the road and struck a tree.

In addition, Trooper Janiszewski testified that pursuant to state law when any driver involved in an automobile accident is killed, the coroner is responsible to draw blood for blood alcohol content.

Richard Ford, an accident investigator reconstructionist, testified that there was no physical evidence that showed there was any difficulty controlling the vehicle up to the point of the skid and gouging marks prior to impact with the tree, and that during the last 1.7 miles had the tire been totally aired out, it would have caused a scraping along the rim of the tire. On cross-examination, Mr. Ford testified that if a rear tire is flat for 1.7 miles as the vehicle goes around a left turn, the weight is shifted over onto the right side of the vehicle and at that time the side wall and the tread, if present, will roll under the rim of the wheel resulting in marks on the roadway surface. Mr. Ford also testified that the bead between the sidewall and the rim would not necessarily be broken but could be maintained.

Dr. Block, a professor of pharmaceutics, testified as to the blood sample drawn from decedent's heart at approximately 9:00 a.m. on November 19, 1987. Dr. Block testified that the laboratory report estimated decedent's blood alcohol level to be 132 mg. per

---

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 431. Section 301(a) provides, in part, that no compensation shall be paid when the injury or death is caused by the employe's violation of law.

The 1993 amendments to the Act amended section 301(a) by adding the following language: In cases where the injury or death is caused by intoxication, no compensation shall be paid if the injury or death would not have occurred but for the employe's intoxication, but the burden of proof of such fact shall be upon the employer.

As claimant's fatal claim petition was filed before the effective date of the 1993 amendments to the Act, the above language is not applicable to the present situation.

deciliter. It was Dr. Block's opinion that when only one sample is taken there is no way of assessing whether or not the error involved in the management is substantial or minimal.

Dr. Block opined that given the tremendous person to person variability and effect of alcohol relative to concentration and systemic blood in studies that have been published to date, that it would be quite difficult to predict the effect that this concentration would have corresponded to and should be nearly impossible to project a central nervous system concentration for alcohol based upon the single post mortem blood sample that was analyzed just one time. As a result, Dr. Block testified that it would be sheer speculation what effect decedent's blood alcohol level may or may not have had on decedent at the time of his death.

Before the referee, employer presented the testimony of Trooper William E. Wetzel, Thomas P. Baker, and Charles Winek, Ph.D. Trooper Wetzel testified that decedent's drug alcohol result of .132 constituted a misdemeanor criminal violation of the Pennsylvania Vehicle Code which is commonly referred to as a DUI or driving under the influence.

Mr. Baker, a mechanical engineer, testified after viewing photographs of the rear tire and rim, that the tire had been driven flat for a very long distance, probably several miles because the tread was totally missing and the tire consisted only of the two beads and lower sidewalls. Mr. Baker testified that the condition of the right rear tire of decedent's vehicle was not the result of a blow out but the result of a long drive on a flat tire.

Mr. Baker testified further that the dynamic forces of a deflated tire would be rather insignificant as long as the vehicle was driven straight ahead on a straight roadway; however, under any sort of steering maneuver such as would be required to negotiate the curves of the roadway involved in this case, the absence of inflation pressure in the right rear tire would cause the rear of the vehicle to sway sideways by an unusual amount whenever these curves were negotiated. Dr. Baker opined that this would be accentuated and more pronounced on curves to the left than on curves to the right. Mr.

Baker testified that there were five left turns in the portion of the roadway he viewed. In addition, Mr. Baker opined that the lack of inflation pressure in the right rear tire would cause the back of the vehicle to swing noticeably to the right and cause the vehicle to steer more than the usual amount towards the left as a result.

Dr. Winek, a board-certified forensic toxicologist, testified that the blood sample taken from decedent's heart indicated a blood alcohol level equivalent to .132%. Dr. Winek testified that the lapse of time from death until the drawing of blood would not affect the accuracy of the test results as there is no change in the alcohol content after death for the first 24 to 48 hours. Dr. Winek opined that alcohol affects all systems of the body and adults at blood alcohol levels of between .07 and .08 results in an impairment of sensory, motor and judgment functions.

He further opined that decedent was intoxicated at the time of his accident and that he was unfit for the safe operation of a motor vehicle as he was deprived of his normal judgment functions, normal sensory functions and normal motor functions. Dr. Winek testified that because of decedent's state of intoxication and the deprivation of his normal driving skills and abilities, alcohol was causally related to decedent's accident. In addition, Dr. Winek opined that driving on a flat tire is not inconsistent with being under the influence of alcohol as opposed to stopping.

Mr. Howard, a chemist employed by the Pennsylvania Department of Health, testified that he received two tubes of decedent's blood on November 25, 1987 and that two gas chromatography analyses were performed on the specimen. Dr. Howard testified that the specimen was blood and not serum and that the average of the two tests was .132%.

Based on the testimony presented, the referee made the following relevant finding of fact:

26. Your Referee specifically rejects the testimonies of Richard Ford and Dr. Lawrence Block and specifically accepts as credible the testimonies of Edward J. Janiszewski, William E. Wetzel, Thomas P. Baker, Dr. Charles Winek, and Lloyd J.

Howard. Your Referee specifically accepts as credible the testimony of Corporal Wetzel and Thomas P. Baker that the decedent's right rear tire was flat 1.7 miles before the accident site and possibly even three, four or five miles according to the testimony of Thomas P. Baker for which the decedent continued to drive on and that there were three feet of skid marks on the roadway followed by 115 feet of gouge marks and then three feet of deep gouge marks after which the decent's vehicle left the roadway and flipped and traveled a distance of 20 feet striking a tree seven feet high. Your Referee accepts as credible the testimony of Dr. Winek and Lloyd J. Thomas that the decedent was intoxicated having a blood alcohol level of .132 in violation of Motor Vehicle Code Section 37.31 which was the cause of the [decedent's] fatal accident.

The referee determined that based on the evidence there was nothing to show that claimant was not in the course of his employment. However, the referee concluded that he did not need to decide the ultimate issue as to whether or not decedent was in the course and scope of his employment as the referee found as a fact that decedent's blood alcohol level was .132% at the time of the accident in violation of the Vehicle Code and that said intoxication was the cause of decedent's fatal accident. Therefore, recovery of compensation was barred under section 301(a) of the Act.

■ Claimant appealed the referee's decision to the board. Employer did not appeal the referee's decision regarding the issue of whether or not decedent was in the course or scope of his employment at the time of the fatal accident. The board affirmed the referee's decision and this appeal by claimant followed.[2]

On appeal, claimant raises two issues: (1) whether the referee erred in accepting as credible the results of a blood alcohol test performed on blood taken from decedent's heart; and (2) whether the referee erred in

concluding that decedent was intoxicated because he failed to realize he was driving on a flat tire prior to his accident.

■ Initially we note that compensation laws are socially oriented and must be construed liberally in order to effectuate their beneficent purposes. *Oakes v. Workmen's Compensation Appeal Board (Pennsylvania Electric Co.)*, 79 Pa.Commonwealth Ct. 454, 469 A.2d 723 (1984). Section 301(a) of the Act provides that compensation is barred where the injury results from a claimant's violation of law and, also, specifically places the burden of proving a violation of law on the employer. 77 P.S. § 431. The employer's burden of proof is greater than a mere preponderance. *Franks v. Workmen's Compensation Appeal Board (SEPTA)*, 148 Pa.Commonwealth Ct. 25, 613 A.2d 36 (1991). Although the employer is not required to prove causation beyond a reasonable doubt, it must establish a causal connection between the violation of law and the claimant's injuries. *Id.*

Claimant argues that post mortem blood taken from the heart is of such questionable scientific value as not to rise to the level of substantial evidence. In support of this argument, claimant relies on *Arnold Bakeries, Inc. v. Workmen's Compensation Appeal Board (Knowles)*, 80 Pa.Commonwealth Ct. 531, 471 A.2d 1329 (1984).

In *Arnold Bakeries*, employer presented the defense that the claimant had violated the law because he was presumed to be under the influence under section 1547 of the Vehicle Code since his blood alcohol level was .10% or greater. Therefore, this court was faced with the argument by the employer that its burden had been so incontrovertibly established that the referee's failure to accept the defense as presented represented a capricious disregard of the competent evidence.

In discussing employer's argument, this court noted that the claimant presented, in addition to other evidence, evidence demon-

---

2. Our scope of review is to determine if constitutional rights have been violated, an error of law has been made, or necessary findings are not supported by substantial evidence. *Russell v.*

*Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Commonwealth Ct. 436, 550 A.2d 1364 (1988).

strating that in medical science it is questioned whether a blood alcohol test can be relied upon as an accurate representation when the sample or specimen is taken from the heart rather than blood in a circulating area such as an extremity. This evidence was pointed out by this court, along with the other evidence presented by the claimant, with respect to a discussion regarding claimant's argument that this evidence, along with the other evidence, provided a basis on which the referee could find, as he did, in favor of the claimant without a capricious disregard of the statutory inference in the presumption that based on decedent's blood alcohol content he was intoxicated.

This court was not citing this evidence as a holding that post mortem blood taken from the heart is unreliable and of such questionable scientific value as not to rise to the level of substantial evidence. What this court held in *Arnold Bakeries* was that "[w]hile it may be that the referee in this case could have found the necessary causal relationship, assuming intoxication, and could have found in favor of the petitioners, we find no error in the exercise of his discretion as a fact finder in finding in favor of the claimant." *Id.* at 535, 471 A.2d at 1331. Therefore, claimant's reliance on *Arnold Bakeries* is misplaced.

■■■ As in *Arnold Bakeries,* we find no error on the part of the referee in the present case in accepting as credible the result of a blood alcohol test performed on blood taken from decedent's heart. It is well settled, that a referee is the ultimate fact finder with exclusive province over questions of credibility and evidentiary weight. As such the referee is free to accept or reject the testimony of any witness in whole or in part. *General Electric v. Workmen's Compensation Appeal Board (Valsamaki),* 140 Pa.Commonwealth Ct. 461, 593 A.2d 921 (1991).

The referee had before him the deposition testimony of Dr. Block, claimant's witness, that testified as to the unreliability of the results of the blood sample taken from decedent's heart. As was within his province, the referee specifically rejected as incredible Dr. Block's testimony. Finding of Fact No. 26.

Next, claimant argues that the referee erred in concluding that decedent was intoxicated because he failed to realize he was driving on a flat tire prior to his accident. Claimant contends that this finding is based on pure speculation and is not supported by competent and substantial evidence as a matter of law. Specifically, claimant contends that Dr. Winek's testimony was highly speculative and that even if decedent had not been intoxicated he would not have known the tire was flat. We disagree.

This court has held that testimony by a toxicologist, who had examined records of an employees' blood alcohol content as it existed shortly after a motor vehicle accident, and who testified that the content was sufficient to significantly impair sensory and motor functions and that a person with such content could not safely operate a motor vehicle was competent evidence on the question of whether the accident could have been caused by the employee's intoxication. *See National Minerals v. Workmen's Compensation Appeal Board (Thomas),* 73 Pa.Commonwealth Ct. 639, 458 A.2d 1061 (1983). In the present case, Dr. Winek testified that in his opinion decedent was intoxicated and that his normal driving skills and abilities were impaired. As a result, it was Dr. Winek's opinion that driving on a flat tire is not inconsistent with being under the influence as opposed to stopping. As already stated in this opinion, the referee found Dr. Winek's testimony to be credible.

Furthermore, the referee accepted as credible Mr. Baker's testimony, employer's witness, that the condition of the right rear tire would have caused the rear of the vehicle to sway sideways by an unusual amount whenever left curves or left turns were negotiated. Mr. Baker testified that the portion of the roadway that he viewed contained five left turns. Therefore, it is clear that even if decedent had not been legally intoxicated, he probably would have known that his right rear tire was flat.

■■■ Accordingly, the referee's decision that decedent's violation of law caused his fatal accident and not the flat tire, is based upon substantial evidence; therefore, the order of the board is affirmed.

## ORDER

NOW, this 5th day of January, 1995, the order of the Workmen's Compensation Appeal Board, dated November 29, 1993, at No. A93–0128, is affirmed.